1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 03, 2020

SEAN F. McAVOY, CLERK

3

4

5        UNITED STATES DISTRICT COURT

6        EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 7 SAVED MAGAZINE, a Washington limited liability company; AFSHIN YAGHTIN and MARY FELL YAGHTIN, and the marital community comprised thereof | NO: 2:20-CV-24-RMP |
| 10            Plaintiffs, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT |
| 11      v. | |
| 12 SPOKANE POLICE DEPARTMENT; CRAIG N MEIDL, in his official and personal capacity; JOHN DOE and JANE DOE, and the marital community comprised thereof, | |
| 15            Defendants. | |

17        BEFORE THE COURT is a Motion to Dismiss Plaintiffs' Amended

18    Complaint, ECF No. 40, by the Spokane Police Department, Craig Meidl, and the

19    Doe Defendants.  Having reviewed the briefing from the parties, the relevant law,

20    and the remaining docket, the Court is fully informed.

21

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT~ 1

## BACKGROUND

On July 9, 2020, on motion by all original Defendants, this Court dismissed the Plaintiffs' original Complaint with prejudice with respect to former Defendant Spokane Public Library and without prejudice with respect to the remaining Defendants and claims. ECF No. 35. Specifically, this Court found that it lacked subject matter jurisdiction over Plaintiffs' claims for declaratory and injunctive relief under Fed. R. Civ. P.12(b)(1), and found that Plaintiffs' claims for retrospective relief based on 42 U.S.C. § 1983 against Defendants City of Spokane, Chief Craig Meidl, and Officer Kevin Vaughn failed to state a claim upon which relief could be granted under Fed. R. Civ. P. 12(b)(6). *Id.* at 23. The Court granted Plaintiffs leave to amend the identified deficiencies. *Id.* Plaintiffs filed their "Amended Verified Complaint" ("Amended Complaint") on August 7, 2020. ECF No. 37 at 1. The following background is from the Amended Complaint or the materials submitted as attachments to the Amended Complaint.

Plaintiffs allege that Plaintiff Afshin Yaghtin, as a journalist for Plaintiff Saved Magazine, sought to cover the "Drag Queen Story Hour" event at the downtown branch of the Spokane Public Library on June 22, 2019, which was scheduled to start at 2:00 p.m. ECF No. 37 at 3. Plaintiffs allege that Mr. Yaghtin arrived at approximately 1:45 p.m., displayed a press badge, identified himself as a member of the press, and intended to interview both protestors and counter-

protestors. *Id.* Protestors and counter-protestors were separated into different zones outside the library. *See id.*

Allegedly out of a concern that "fake press people" were attempting to infiltrate the reading, Plaintiffs allege that "Mr. Yaghtin was assigned a 'detail' in the form of an officer who accompanied him as he moved through the crowd of counter protestors." ECF No. 37 at 3. Plaintiffs purport to quote from a police log entry from 12:51 p.m. alerting "'all units'" that the subject who "'was arrested last time is on scene with a press pass will [sic] be allowed to move freely throughout the event on both sides, until he starts causing problems. He's been warned if he does cause problems, he will be under arrest.'" *Id.* at 4.

The Amended Complaint indicates that "Sgt. Vaughn," who is not named as a Defendant, allegedly "acknowledged" that Yaghtin was a member of the press and escorted Yaghtin to the entrance of the library where Officer Vaughn allegedly stated:

> So here's the deal. You can move freely. Alright? Once you start engaging people and if you cause a problem or anything like that you're subject to arrest. Plain and simple. If you want to act as the press and report on it, you can do that. Until you start engaging with people and there's problems, we will deal with it then and you'll be subject to arrest.

*Id.* at 4.

Plaintiffs allege that the officer escorting Yaghtin stood by silently while a different officer, Defendant John Doe, interrupted Yaghtin's conversation with a

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT~ 3

counter-protestor.  ECF No. 37 at 4.  The counter-protestor allegedly asked Yaghtin,

"Aren't you the one who advocated for execution of gay people?"  *Id.*  Yaghtin

allegedly responded, "No that is what the Bible says . . . ."  *Id.*  Plaintiffs allege that

Officer Doe then interrupted the exchange with the following interjection, according

to the Amended Complaint:

> ok, you are not exercising your press rights. If you want to report the
> story you can. . . it is not your job to answer his questions . . . you are
> engaging [the counter-protestor] on political topics . . . you need to act
> like the press and not try to take a political view . . . you can't . . . preach
> the bible to people.  I heard you mention the Bible.

*Id.* at 4−5 (capitalization as in Amended Complaint).  Plaintiffs allege that Yaghtin

responded to the officer that he had been "asked a question and was there to

comply," further alleging that journalists "routinely engage in conversations with

participants at events and quote or otherwise report on their statements."  *Id.* at 5.

Plaintiffs allege that Officer Doe's statements to Yaghtin contravened

Spokane Police Department Policy 462, which allegedly provides:

> 462.2 The Spokane Police Department respects the rights of people to
> peaceably assemble.  It is the policy of this department not to
> unreasonably interfere with, harass, intimidate, or discriminate against
> persons engaged in the lawful exercise of their rights, while also
> preserving the peace, protecting life and preventing the destruction of
> property.

> 462.3 GENERAL CONSIDERATIONS Individuals or groups present
> on the public way, such as public facilities, streets or walkways,
> generally have the right to assemble, rally, demonstrate, protest or
> otherwise express their views and opinions through varying forms of
> communication, including the distribution of printed matter.

1  ECF No. 37 at 5.

2          Plaintiffs further allege that Defendant Spokane Police Department ("SPD")

3  "adopted" Officer's Doe's actions "through silent acquiescence" when the SPD "did

4  not assert that Officer Doe's action(s) are in discord with the SPD policy . . . ."  ECF

5  No. 37 at 5.

6          Plaintiffs allege that Yaghtin's counsel wrote in a letter dated June 27, 2019,

7  and addressed to Defendant Spokane Police Chief Craig Meidl, whether Officer

8  Doe's quoted statement "represented 'the practices, policies, and official position of

9  the Spokane Police Department,' and, if not, to indicate the steps they would take to

10  train the policer [sic] officers and staff to ensure this would not happen again."  ECF

11  No. 37 at 6, 18 (citing a purported copy of Yaghtin's counsel's June 27, 2019 letter

12  attached to the Amended Complaint); *but see* ECF No. 37 at 18 (asking whether

13  different statements by "Officer K. Vaugh" were consistent with the practices,

14  policies, and official position of the SPD, but saying nothing about Officer Doe's

15  alleged statements to Yaghtin).  Yaghtin's counsel asserted that Yaghtin intended to

16  attend similar events as the press in the future and asked Chief Meidl to respond to

17  the inquiry by July 11, 2019, and, if Officer Vaughn's statements to Yaghtin did not

18  reflect SPD policy, counsel requested that Chief Meidl "indicate what steps [Chief

19  Meidl] would be taking to train . . . police officers and staff to ensure this does not

20  happen again."  *Id.*

21

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT~ 5

Assistant City Attorney Mary Muramatsu responded to Yaghtin's counsel by letter dated July 3, 2019, on behalf of the SPD and Chief Meidl, requesting as follows:

> If you are aware of any facts that show the police prevented Mr. Yaghtin from exercising his fundamental right to speak or to engage in journalism on June 22, 2019, please provide those along with any supportive evidence, including the basis for which corrective action should be taken. It is our goal to work with your office to find a successful resolution to this matter, including clearing up any misperceptions that may have occurred surrounding this incident.

ECF No. 37 at 6, 21 (attaching a copy of the purported July 3, 2019 letter from the City Attorney's Office to the Amended Complaint).

Plaintiffs allege that on July 11, 2019, Yaghtin's counsel emailed Muramatsu "with a link to two videos that recorded Officer John Doe's admonishing Mr. Yaghtin and video evidence of the [sic] Yaghtin's inability to conduct interviews with counter protestors." ECF No. 37 at 6. Plaintiffs further allege that the email "reiterated the request for the official position of the Spokane Police Department and added, 'These videos demonstrate that [Yaghtin] was silenced and censored. When he did speak in response to a question, he was interrupted, and made to stop speaking despite both individuals expressing an interest in talking.'" *Id.* Although the Amended Complaint purports to quote from the two emails dated July 11, 2019, the alleged copies of the emails filed by Plaintiffs do not contain the statements that the Amended Complaint purports to quote. *Compare* ECF No. 37 at 6 *with* ECF No.

1    37 at 23−24; *see also* ECF No. 40 at 11 n. 1 (Defendants also note these inaccuracies

2    and misrepresentations).

3        The July 11, 2019 emails do not refer to any actions by an Officer Doe.

4    Rather, in the 9:28 a.m. email, Yaghtin's counsel reiterated his question regarding

5    whether "the views of Officer K. Vaugh [sic] represent the practices, policies, and

6    official position of the Spokane Police Department[,]" and, if not, "what steps [the

7    City] will be taking to train [its] police officers and staff to ensure this does not

8    happen again." ECF No. 37 at 23. In the email marked sent at 1:57 p.m., Yaghtin's

9    counsel asserted:

10       These videos demonstrate that my client was intimidated, threatened
         and not allowed to engage individuals in his capacity as a member of
11       the press. He had the right to engage and would have if he was not
         unlawfully threatened. He was forced to walk through quietly and only
12       allowed to speak if he was asked a question. When he did speak in
         response, he was bullied by the police into complying with their
13       parameters on his speech against his will.

14   ECF No. 37 at 24.

15       According to a July 19, 2019 email that Plaintiffs attached to their Amended

16   Complaint, Muramatsu responded:

17       Thank you for forwarding the videos. I've been out of the office and
         will need additional time to review these materials. That said, I
18       appreciate your willingness to discuss your client's concerns. We are
         always looking to provide better training to the police department and
19       to improve policies that will ensure public safety while protecting
         individual rights. As I indicated previously, I welcome your
20       suggestions regarding potential policy revisions or updated training in
         this area.

21

ECF No. 37 at 26.

On July 22, 2019, Yaghtin's counsel responded to Muramatsu repeating his inquiry regarding whether Officer Vaughn's June 22, 2019 statements to Yaghtin reflected an official practice, policy, or position of the SPD.  ECF No. 37 at 6, 31.

On July 26, 2019, Muramatsu responded, according to the purported copy of an email that Plaintiffs attached to their Amended Complaint:

> Again, I want to thank you for forwarding the videos and for presenting your client's concerns.  We will review and evaluate what you have submitted.  As I previously indicated, we are always willing to entertain suggestions for improvement and to update training to city employees. In prior correspondences, I've encouraged you to provide your input regarding any actions you believe should be taken to address your client's concerns.  Unless you have additional analysis or recommendations for us to consider, this concludes our response.

ECF No. 37 at 33.

Plaintiffs also provided the Court with a purported recording of the interaction involving Yaghtin, the counter-protestor, and Officer Doe.  *See* ECF No. 37 at 7; *see also* ECF No. 39.

Plaintiffs' Amended Complaint alleges that the preceding background supports a claim under 42 U.S.C. § 1983 for violation of the freedom of the press under the First Amendment, as made applicable to the States under the Fourteenth Amendment.  ECF No. 37 at 7−8.  Plaintiffs allege that Yaghtin was in a public forum while attending the Drag Queen Story Hour event at the downtown Spokane Public Library, and he was acting as a member of the press throughout the time that

he was there.  *Id.* at 7.  Plaintiffs allege that Defendants violated the right to freedom of the press by monitoring Yaghtin's interactions to determine whether Yaghtin's statements "meet with Defendants' approval and constitutes a legitimate interview." *Id.*  Plaintiffs further allege "by interrupting the interview, and thereby stifling or otherwise prohibiting the interview, Defendants have violated the Plaintiffs' rights to freedom of the press." *Id.* at 8.

Plaintiffs further allege a parallel claim under Article I, § 5 of the Washington State Constitution, claiming that Defendants' actions toward Plaintiffs, which Plaintiffs characterize as "subversive tactics," amount to "a prior restraint on speech and, by extension, of the press." ECF No. 37 at 8–9.

Plaintiffs seek declaratory relief, as well as damages against Defendants as follows:

> A declaration that Defendants have violated the First and Fourteenth Amendments to the United States Constitution;
> A declaration that Defendants have violated Article I, § 5 of the Washington Constitution;
> General, nominal, and special damages against Defendants according to proof;
> Attorneys' fees;
> Costs of suit; and
> Other relief the court deems just including leave to amend the complaint to add parties and causes of action.

ECF No. 37 at 9.

/ / /

/ / /

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT~ 9

1

## LEGAL STANDARD

2      To survive a motion to dismiss for failure to state a claim upon which relief

3   can be granted under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient

4   factual matter, accepted as true, to 'state a claim to relief that is plausible on its

5   face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

6   *Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when the plaintiff pleads

7   "factual content that allows the court to draw the reasonable inference that the

8   defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "In sum, for

9   a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and

10  reasonable inferences from that content, must be plausibly suggestive of a claim

11  entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962,

12  969 (9th Cir. 2009).

13     As a general rule, a district court must convert a Rule 12(b)(6) motion to

14  dismiss into a motion for summary judgment under Fed. R. Civ. P. 56 if the court

15  considers matters outside of the pleadings.  Fed. R. Civ. P. 12(d).  However, courts

16  may take judicial notice of additional facts from public documents.  Fed. R. Evid.

17  201(d); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir.

18  2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019)*.  Courts also

19  may consider documents referenced in the complaint in ruling on a Rule 12(b)(6)

20  motion and doing so does not convert the motion into one for summary judgment.

21  *See Khoja*, 899 F.3d at 998.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT~ 10

**DISCUSSION**

Plaintiffs contend that Officer Doe's interruption of Yaghtin's interaction with the counter-protestor chilled the conversation to the point of censorship and "deprived Yaghtin of his ability to interview and report and thus deprived Saved magazine and Yaghtin of the freedom of the press and speech afforded by and through the First and Fourteenth Amendments, as well as Washington Constitution, Article I, § 5." ECF No. 37 at 5. The Court first addresses two preliminary, procedural matters and then addresses Plaintiffs' claims based on the First and Fourteenth Amendments with respect to each Defendant.

### *Incorporation by Reference*

As noted above, courts may examine documents that they judicially notice or incorporate into the complaint by reference in determining the sufficiency of a complaint. *Khoja*, 899 F.3d at 998. In granting dismissal of Plaintiffs' original Complaint, the Court recognized that the four videos of the events on June 22, 2019, that were referenced by the Complaint "should be considered as incorporated into Plaintiffs' Complaint," but the Court did not rely on the video footage or any portion of the declarations or exhibits submitted by Defendants because controlling law required dismissal regardless of those materials. ECF No. 35 at 13.

Plaintiffs again refer to video footage, in the form of police body camera footage, in their Amended Complaint that they did not submit with their pleading, despite being placed on notice that such material is properly considered if the

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT~ 11

Amended Complaint refers to and depends on it.  *See* ECF Nos. 35 at 11−13; 37 at 4.

Specifically, Plaintiffs assert that the police body camera video depicts Officer

Doe's interruption of Yaghtin's conversation with the counter-protestor.  *Id.*

Defendants, in turn, again seek to incorporate this footage by reference for purposes

of their Motion to Dismiss the Amended Complaint.  ECF No. 40 at 12.  Plaintiffs

do not object or otherwise address the matter in their response.  ECF No. 42.

The Court finds that the police body camera footage appropriately is

incorporated by reference into the Amended Complaint, as Plaintiffs' Amended

Complaint refers to the footage explicitly.  *See Khoja*, 899 F.3d at 998.

### *Untimeliness of Plaintiffs' Response*

Defendants' Motion to Dismiss Plaintiffs' Amended Complaint was filed on

August 21, 2020.  ECF No. 40.  According to the Local Civil Rules that govern this

District, Plaintiffs' response was due on September 11, 2020.  *See* LCivR 7(c)(2)(B).

Defendants object to Plaintiffs' late filing, without explanation, of an unsigned

response brief on September 15, 2020, ECF No. 41, and a refiled, signed brief on

September 21, 2020, ECF No. 42.  ECF No. 44 at 5−6.

The Court agrees that it has the discretion to interpret Plaintiffs' failure to

timely respond to the instant motion as consent to entry of an adverse order, but

nevertheless proceeds to analyze the substantive issues raised by Defendants'

Motion to Dismiss.  *See* LCivR 7(e).

***Section 1983 Claim for Violation of First Amendment Freedom of the Press***

A plaintiff may bring a claim under 42 U.S.C. §1983 to vindicate federal rights conferred by the U.S. Constitution or statute.  *See Albright v. Oliver*, 510 U.S. 266, 271 (1994).  To plead a section 1983 violation, Plaintiffs must allege facts from which the Court may infer that (1) he was deprived of a federal right, and (2) a person or entity who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).  Plaintiffs must allege that they suffered a specific injury and show a causal relationship between Defendants' conduct and the injury allegedly suffered by Plaintiffs.  *See Rizzo v. Goode*, 423 U.S. 362, 371−72, 377 (1976).  There is no respondeat superior liability under section 1983, and the supervisor of an individual who allegedly violated a plaintiff's constitutional rights is not made liable for the violation simply by virtue of that role. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978).  "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Taylor v. List*, 880 F.2d, 1040, 1045 (9th Cir. 1989).

As with other complaints, conclusory allegations unsupported by facts are insufficient to state a civil rights claim under section 1983.  *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (per curiam) (holding that plaintiff's claims of a

conspiracy to violate his constitutional rights under section 1983 failed because they were supported only by conclusory allegations).

<u>Spokane Police Department and Chief Meidl</u>

Defendants argue that Plaintiffs' section 1983 claims against the SPD should be dismissed because: (1) the SPD is not a "person" for purposes of suit under section 1983; (2) even if the Court construes claims against the SPD as claims against the City of Spokane or Chief Meidl in his official capacity, Plaintiffs do not allege an unlawful policy or practice by the City, even though they were given a second opportunity to do so after dismissal of the original Complaint.  ECF No. 40 at 13−15.  Plaintiffs respond that while they are "not alleging . . . a pattern or practice," a police officer who engages in "content-based discrimination against a member of the press" should not be "allowed to act in discord with policy and their governing bodies do nothing."  ECF No. 41 at 5.

Section 1983 does not provide for *respondeat superior* liability.  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).  However, local governments "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell*, 436 U.S. at 690.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT~ 14

A plaintiff's claim may not survive a motion to dismiss merely by alleging that a policy, custom, or practice exists that caused the constitutional violations. *AE ex rel. Hernandez*, 666 F.3d at 636−37.  However, a municipal policy "may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotation marks and citation omitted).  Likewise, a municipality may be held liable under §1983 when an official with final policy-making authority ratified a subordinate's unconstitutional act. *Gillette v. Delmore*, 979 F.2d 1342, 1346−47 (9th Cir. 1992). Ratification requires a showing of "a conscious, affirmative choice" on the part of the authorized policymaker. *Id*. at 1347.

Plaintiffs in this matter allege a violation of their First and Fourteenth Amendment rights.  "The First Amendment, in conjunction with the Fourteenth, prohibits governments from 'abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.'" *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575, (1980) (quoting U.S. Const. amend. I).  "The Supreme Court has recognized that newsgathering is an activity protected by the First Amendment." *Leigh v. Salazar*, 677 F.3d 892, 897 (9th Cir. 2012) (internal quotation omitted).  However, there may be "reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the

regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'"  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).

The Ninth Circuit has indicated, and this District has held, that police departments and other municipal departments are not "persons" for purposes of section 1983 liability.  *See United States v. Kama*, 394 F.3d 1236, 1239−40 (9th Cir. 2005) (Ferguson, J., concurring) (municipal police departments generally not considered "persons" within the meaning of section 1983); *Maclay v. Cty. of Spokane*, No. 14-cv-91-RMP, 2014 U.S. Dist. LEXIS 176337, at *14 (E.D. Wash. Dec. 22, 2014) (collecting cases from federal district courts in Washington holding that Washington municipal police and sheriff's departments are not legal entities subject to suit).  Other Districts have held the same.  *See Roberts v. City of Beaverton Police Dep't*, No. CV-10-1530-HZ, 2011 U.S. Dist. LEXIS 41956, at *15 (D. Or. Apr. 18, 2011); *Walsh v. Am. Med. Response*, No. 2:13-cv-2077 MCE KJN (PS), 2014 U.S. Dist. LEXIS 69279, at *26 (E.D. Cal. May 20, 2014).  Therefore, the SPD is not an appropriate Defendant for purposes of Plaintiffs' section 1983 claim.

Alternatively, if the Court were to interpret Plaintiffs' claim against the SPD as a claim against the City of Spokane, a municipality may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT~ 16

lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Municipal liability may attach if an employee commits an alleged constitutional

violation "pursuant to a formal governmental policy or a 'longstanding practice or

custom which constitutes the standard operating procedure. . . .'" *Gillette v.*

*Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932 (1993).

Plaintiffs do not allege any facts supporting that Officer Doe's actions were

pursuant to the policy quoted in the Amended Complaint or reflective of any

widespread custom by the SPD.   To the contrary, Plaintiffs allege that the SPD

enacted a general policy against unreasonably interfering with "persons engaged in

the lawful exercise of their rights, while also preserving the peace, protecting life

and preventing the destruction of property." *See* ECF No. 37 at 5.  Plaintiffs' only

allegation regarding municipal liability is that Defendant SPD "adopted" Officer's

Doe's actions "through silent acquiescence" when the SPD "did not assert that

Officer Doe's action(s) are in discord with the SPD policy . . . ."  ECF No. 37 at 5.

Without alleging any assertive conduct by the City, SPD, or Chief Meidl in

his official capacity, nor any causation of Officer Doe's actions on June 22, 2019,

Plaintiffs' conclusory allegation fails to state a *Monell* claim against Defendant SPD,

and Plaintiffs provide no support for their novel assertion that mere silence or

omission can support municipal liability under section 1983 fails as a matter of law.

Indeed, the Court cited contrary authority when concluding that mere silence or even

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT~ 17

an isolated instance of inaction is legally insufficient to avoid dismissal of Plaintiffs'

original Complaint and its allegations that the City's policy allowed for Officer

Vaughn's actions because Assistant City Attorney Muramatsu did not directly

respond to Yaghtin's counsel's question about whether the actions violated the

policy. ECF No. 35 at 17−19 (citing *AE ex rel. Hernandez v. Cty of Tulare,* 666

F.3d 631, 636−37 (9th Cir. 2012)).

Any omission on which Plaintiffs rely for municipal liability is all the more

problematic as a basis for liability in the Amended Complaint because Plaintiffs did

not allege that Yaghtin's counsel asked Muramatsu for the City's position regarding

whether Officer Doe's actions complied with City policy, custom, or practice. *See*

ECF No. 37 at 23−27 (asking only for a position regarding former Defendant Officer

Vaughn). In the post-June 22, 2019 communications relied on by Plaintiffs

throughout their Amended Complaint, there was no question or assertion regarding

Officer Doe for the City to ignore or adopt "through silent acquiescence." *See* ECF

No. 37 at 5, 23−25. The only conduct at issue in the communications was the

alleged conduct by former Defendant Officer Vaughn. *See id.*

Moreover, Plaintiffs' claim against Chief Meidl in his official capacity is

duplicative of their claim against the SPD and must be dismissed for the same lack

of factual allegations. *See Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.

1991) (holding that an "official capacity" claim against a government officer is

equivalent to a suit against the governmental entity itself); *see also* ECF No. 35 at 20

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT~ 18

(dismissing official capacity claim against Chief Meidl in the original Complaint on the same basis).

### Individual Claim Against Officer Doe

To the extent that Plaintiffs further allege personal liability under 42 U.S.C. § 1983 against Officer Doe in his individual capacity, Defendants argue that the claim must be dismissed based on qualified immunity.   ECF Nos. 40 at 15; 44 at 10−15.[1]

Determining whether an individual defendant may assert qualified immunity involves a two-step inquiry: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?"; and (2) "if a violation could be made out on a favorable view of the parties' submissions, . . . [was] the right . . . clearly established . . . in light of

---

[1] The Court also notes that since Plaintiffs do not allege any personal conduct by Chief Meidl, Plaintiffs have failed to state a claim against Chief Meidl on which relief may be granted.  Therefore, as with respect to dismissal of the original Complaint, the Court again need not undertake a qualified immunity analysis for him.  *See Taylor v. List*, 880 F.2d 1040, 1047 (9th Cir. 1989) (holding that personal participation is required for personal liability under § 1983).  Any § 1983 claim against Chief Meidl in his personal capacity is dismissed under Fed. R. Civ. P. 12(b)(6).

the specific context of the case[?]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001),

abrogated in part on other grounds by *Pearson v. Callahan*, 129 S. Ct. 808, 817−18

(2009).  Qualified immunity is "an entitlement not to stand trial or face the other

burdens of litigation."  *Saucier*, 533 U.S. at 200 (internal quotes omitted).

Therefore, qualified immunity questions should be resolved "at the earliest possible

stage in litigation."  *Pearson*, 555 U.S. at 232.

As the Court previously found with respect to former Defendant Officer

Vaughn, Plaintiffs do not identify any "clearly established" right that Officer Doe's

alleged actions violated with respect to accompanying Yaghtin as part of the

enforcement of separate protest zones.  *See* ECF No. 35 at 21−22 (crediting

Defendants' previously cited caselaw regarding the permissibility of protest zones);

*see also Olivieri v. Ward*, 801 F.2d 602, 607 (2d Cir. 1986).

Plaintiffs also offer no analysis or legal authority to support that Officer Doe's

alleged interruption of Yaghtin's interaction with the counter-protestor amounts to a

constitutional violation.  Plaintiffs broadly assert that Yaghtin's engagement with the

counter-protestor was a "valid expression of the First Amendment," and Officer

Doe's interruption was a restraint of the freedom of the press to express such valid

views.  *See* ECF No. 41 at 7.  However, the freedom of the press to gather news is

qualified and generally does not exceed a public's right of access to the same

information or proceeding.  *See Branzburg v. Hayes*, 408 U.S. 665, 684 (1972) ("It

has generally been held that the First Amendment does not guarantee the press a

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT~ 20

constitutional right of special access to information not available to the public

generally.").   Here, the Court already found that the protest zones were permissible.

The allegations that Plaintiffs make in the Amended Complaint do not include that

Yaghtin was excluded from any rightful access to the counter-protest zone, but

merely that Officer Doe warned him that he would not be permitted to "preach" to

the counter-protestor or answer the protestor's questions.  *See Leigh*, 677 F.3d at

897−98 (9th Cir. 2012) ("To provide this First Amendment protection, the Supreme

Court has long recognized a qualified right of access for the press and public to

observe government activities.").

None of Plaintiffs' allegations overcomes the qualified immunity that

Defendants assert on behalf of Officer Doe.  Indeed, as Defendants also note,

Plaintiffs themselves concede that they do not rely on any constitutional standard to

assert that Officer Doe's interjection interfered with an ability to act as a journalist.

*See* ECF No. 41 at 8 ("There is no constitutional standard to determine what

constitutes proper journalism.").  Plaintiffs have failed to state a claim on which

relief can be granted against Officer Doe.  Therefore, any individual liability claim

against Officer Doe is dismissed for failure to state a claim under Fed. R. Civ. P.

12(b)(6).

### Futility of Amendment

The Court already allowed Plaintiffs an opportunity to amend their pleading

after receiving notice from the Court about the deficiencies in the original

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT~ 21

1   Complaint.  The Plaintiffs' Amended Complaint does not allege facts sufficient to

2   show that Plaintiffs are entitled to relief on any of the modified claims or theories

3   that Plaintiffs raise.  Therefore, the Court concludes that in light of the lack of legal

4   foundation for Plaintiffs' theories of liability, and the exhaustive examination by the

5   parties and the Court of the Plaintiff Yaghtin's brief and limited interaction with the

6   relevant law enforcement and City officials, no further amendment could remedy

7   these defects.  *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (holding that

8   futility alone can justify denial of leave to amend).

9            ***Washington State Constitutional Claim***

10            Although dismissal of state law claims after federal claims are dismissed

11   before trial is discretionary, not mandatory, "in the usual case in which all federal-

12   law claims are eliminated before trial, the balance of factors to be considered under

13   the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and

14   comity--will point toward declining to exercise jurisdiction over the remaining state-

15   law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

16            The Court notes that Plaintiffs do not address dismissal of their state law

17   claim in the response brief.  ECF No. 42.  To the extent that Plaintiffs contest

18   dismissal of the Washington State constitutional claim, having concluded that

19   Plaintiffs' federal section 1983 claim must be dismissed with prejudice, the Court

20   declines to exercise supplemental jurisdiction over Plaintiffs' state law claim.  *See*

21   28 U.S.C. § 1367(c)(3).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT~ 22

Accordingly, **IT IS HEREBY ORDERED**:

1.      Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, **ECF No. 40**, is **GRANTED**.

2.      Plaintiffs' Amended Complaint is **dismissed with prejudice** and **without leave to amend**.  In the absence of any surviving federal claim, the Court declines to exercise supplemental jurisdiction over any state law claim, which is dismissed without prejudice.  *See* 28 U.S.C. § 1367(c)(3).

3.      Judgment of dismissal shall be entered on behalf of all Defendants.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter judgment of dismissal as directed, provide copies to counsel, and **close the file**.

**DATED** December 3, 2020.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge